**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **LORENZO NEAL BILLINGSLEY,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )  **Civil Action No.  3:05-CV-428-FWO** |
| | ) |
| **JIMMY ABBETT, et al.,** | ) |
| | ) |
| **Defendants.** | ) |

**DEFENDANTS' SPECIAL REPORT**

COME NOW Tallapoosa County Sheriff Jimmy Abbett, designated as "Jim Abbett" in the Complaint, Chief Deputy Kenny Sherrer, Jail Administrator Blake Jennings, Nurse Cathy Dubose, incorrectly designated as "Kathy Dubosie" in the Complaint, Sergeant Robbie Frazier, Brian Woods, and Sergeant Ava Mason, Defendants in the above-styled cause, and submit their Special Report to the Court as follows:

## I.        INTRODUCTION

Plaintiff in this action, Lorenzo Neal Billingsley, filed his Complaint in the United States District Court for the Northern District of Alabama on April 22, 2005.  On May 4, 2005, that Court entered an order transferring this case to the United States District Court for the Middle District of Alabama.  Plaintiff filed amended complaints on May 10, 2005, May 11, 2005, and May 16, 2005.  On May 17, 2005, Magistrate Judge Charles S. Coody recommended that the Tallapoosa County Jail be dismissed as a defendant.  That same date the Court ordered the remaining Defendants to file a Special Report within forty days from the date of the order.

Plaintiff was arrested on March 23, 2005, for failure to pay child support and failure to pay fines associated with a conviction for use/possession of drug paraphernalia from May 17,

1999.  (Exhibit A, Inmate File of Lorenzo Neal Billingsley, "Inmate File", Alabama Uniform

Arrest Report; Exhibit B, Alabama SJIS CC/DC Case Detail.)   He was transported to the

Tallapoosa County Jail where he is currently being held.   (Inmate File, Alabama Uniform Arrest

Report.)   Plaintiff requests compensatory damages as well as release from jail. (Plaintiff's

Complaint.)

## II.    PLAINTIFF'S ALLEGATIONS

Plaintiff's allegations are based on the following:

(1) Inadequate medical treatment
(2) Being housed with state inmates
(3) A jail officer covered one of the windows to the men's cell while females were
     walking down the hall.
(4) Having to sleep on the floor

## III.    DEFENDANTS' RESPONSE TO PLAINTIFF'S ALLEGATIONS

Defendants deny the allegations made against them by Plaintiff as being untrue and

completely without basis in law or fact.  Defendants affirmatively deny that they acted, or caused

anyone to act, in such a manner as to deprive the Plaintiff of any right to which he was entitled.

(Exhibit C, Affidavit of Sheriff Jimmy Abbett, "Abbett aff.", ¶ 3; Exhibit D, Affidavit of Kenny

Sherrer, "Sherrer aff." ¶ 4; Exhibit E, Affidavit of Blake Jennings[1], "Jennings aff." ¶ 4;  Exhibit

F, Affidavit of Nurse Cathy Dubose[2], "Dubose aff." ¶ 3; Exhibit G, Affidavit of Robbie Frazier,

"Frazier aff.", ¶ 4 Exhibit H, Affidavit of Brian Woods[3], "Woods aff." ¶ 4, and Exhibit I,

Affidavit of Ava Mason, "Mason aff." ¶ 4.)   Defendants raise the defenses of Eleventh

Amendment immunity, qualified immunity, Plaintiff's failure to comply with the Prison

[1] Blake Jennings has been employed by the Tallapoosa County Sheriff's Department since 1998.  On March 19, 2005, he became the Jail Administrator of the Tallapoosa County Jail. (Jennings aff. ¶ 2).
[2] Nurse Cathy Dubose is a Registered Nurse and provides medical services to the inmates at the Tallapoosa County Jail and has done so since January 23, 2005.
[3] Attached hereto is a copy of the unsigned affidavit of Brian Woods, upon receipt of the executed copy Brian Woods's affidavit, the Defendants will supplement this Special Report.

Litigation Reform Act and additional defenses presented below.  Defendants reserve the right to add additional defenses if any further pleading is required or allowed by the Court.

A.    **FACTS**

1.    **Inadequate medical treatment**

It is the policy of the Tallapoosa County Jail that access to appropriate health care services are provided for the inmates of the Jail for their physical and emotional well-being.  An inmate requesting any type of health care services may submit either an Inmate Request Form or Medical Request/Charge Sheet stating the service desired.  At the time of admission to the jail, each inmate undergoes a medical screening completed by the booking officer.  In the event of a medical emergency, or a perceived medical emergency, the shift supervisor arranges for medical services without delay.  The shift supervisor ensures that the medical protocol is followed to ensure a safe and secure manner is maintained.  Except in the case of an emergency, each inmate requesting medical services is screened by the jail nurse who then makes a referral to a physician if it is determined that a physician visit is appropriate.  All medical appointments, including appointments with the jail nurse, are logged by the jail staff in the inmate log.  Inmates are given prescription medication as prescribed.  Medication is distributed according to instructions from the prescribing physician and is distributed by a jail staff member as directed by the jail nurse.  Staff members of the Tallapoosa County Jail take no deliberate action to block, deny, or delay access of an inmate to health care.  The Jail Nurse is on duty from 8:00 a.m. until 5:00 p.m. on Mondays through Fridays.  She is on call at all times of the day and night. (Jennings aff. ¶ 5.)

On March 24, 2005, the day after Plaintiff was booked into the Tallapoosa County Jail, he saw Nurse Cathy Dubose and informed her that he was taking cardiac medication but did not know the name of the medication.  (Dubose Affidavit ¶ 5; Exhibit J, Medical File of

Lorenzo Neal Billingsley, "Medical File", Progress Notes dated March 24, 2005; Exhibit K, Medical File, Medical Request/Charge Sheet dated March 24, 2005). Nurse Dubose provided Plaintiff with an authorization form so that she could obtain his medical records from a cardiologist that Plaintiff had seen prior to coming to the Jail. (Dubose aff. ¶ 5; Medical File, Progress Notes dated March 24, 2005; Exhibit L, Medical File, Authorization for Disclosure of Confidential Information form dated March 24, 2005.) Nurse Dubose then faxed the signed medical release form to Grady Memorial Hospital where Plaintiff told her he had seen a Dr. Moore. (Id.) Nurse Dubose spoke with Grady Memorial Hospital Medical Records several times and was unable to obtain any records of heart problems. (Id.; Medical File, Progress Notes dated March 25, 2004; Exhibit M, Medical File, Medical Records obtained from Grady Hospital). On April 6, 2005, Nurse Dubose faxed another signed authorization form to Dr. Sublett, but again was unsuccessful in finding any record of heart medications. (Dubose aff. ¶ 5; Medical File, Progress Note dated April 6, 2005, Exhibit N, Authorization for Disclosure of Confidential Information dated April 6, 2005; Exhibit O, Medical File, Medical Records obtained from Russell Medical Center.)

On April 1, 2005, Nurse Dubose prescribed Miconazole Cream, an anti-fungal cream for Plaintiff's foot blisters as well as extra-strength Tylenol. (Dubose aff. ¶ 6; Exhibit P, Medical File, Physician Orders dated April 1, 2005.) Plaintiff informed Nurse Dubose that he had had a similar problem with his foot prior to coming to the jail. (Dubose Affidavit ¶ 6.) Plaintiff was seen by Dr. Schuster, the Jail Physician, for treatment of his left foot condition on April 7, 2005. (Dubose aff. ¶ 6; Medical File, Progress notes dated April 7, 2005.) Dr. Schuster prescribed Keflex, an antibiotic, for treatment of Plaintiff's left foot condition. (Id.; Medical File, Physician Orders dated April 7, 2005.) On April 8, 2005, a culture of the

blisters was taken at Lake Martin Hospital. (Dubose aff. ¶ 6; Medical File, Progress notes dated April 8, 2005; Exhibit Q, Medical File, Medical Records from Lake Martin Hospital.)) That day Nurse Dubose dressed Plaintiff's left foot and started his antibiotics. (Id.; Exhibit R, Medical File, Medication Administration Record dated April 1, 2005 through April 30, 2005.) On April 12, 2005, Plaintiff requested to see the doctor.  (Medical File, Medical Request/Charge Sheet dated April 12, 2005.)  On April 12, 2005, and April 14, 2005, Nurse Dubose rechecked, washed, and dressed Plaintiff's foot.  (Dubose aff. ¶ 6; Medical Records, Progress Notes dated April 12, 2005, and April 14, 2005.)  Plaintiff saw Dr. Schuster on April 19, 2005, at which time Dr. Schuster discontinued the Keflex and prescribed fourteen days of Doxycycline, another antibiotic.  (Dubose aff. ¶ 6; Medical File, Progress Notes dated April 19, 2005, Physician Orders dated April 19, 2005; Medication Administration Record dated April 1, 2005 through April 30, 2005; Exhibit S, Medical File, Medication Administration Record dated May 1, 2005 through May 30, 2005 )  Dr. Schuster also prescribed Betanex Cream for fourteen days for Plaintiff's foot. (Id.)   Nurse Dubose checked and cleaned Plaintiff's foot on April 21, 2005, and May 2, 2005.  (Dubose aff. ¶ 6; Medical File, Progress Notes dated April 21, 2005, and May 2, 2005.)  Nurse Dubose noted that the new antibiotics seemed to be working and that the foot appeared better.  (Id.)

On May 4, 2005, Dr. Schuster saw Plaintiff again.  (Dubose aff. ¶ 6; Medical File, Progress Notes dated May 4, 2005.)  Dr. Schuster referred Plaintiff to Dr. Steven Mackey, asking Nurse Dubose to set up the appointment.  (Id.)   Dr. Schuster also prescribed Amoxicillin and reordered the Benanix Cream. (Id.)  The next day Nurse Dubose arranged an appointment for Plaintiff to see Dr. Mackey in Alexander City on May 9, 2005.  (Dubose aff. ¶ 6; Medical File, Progress Notes dated May 5, 2005.)  At no time was Nurse Dubose, Sheriff

Abbett, or Jail Administrator Jennings ordered by a judge to make this appointment.  (Dubose aff. ¶ 6; Abbett aff. ¶ 6; Jennings aff. ¶ 6.)  The appointment was made due to referral from Dr. Schuster, the Jail Physician.  (Dubose aff. ¶ 6.)

Plaintiff was taken to see Dr. Mackey on May 9, 2005.  (Dubose aff. ¶ 7; Exhibit T, Medical File, Records received from Dr. Mackey dated May 9, 2005.)  Dr. Mackey diagnosed Plaintiff with Tinea pedis, "Athlete's Foot", and prescribed three weeks of Lamisil, an anti-fungal medication, and Loprox gel, a topical anti-fungal medication.  (Id.; Medical File, Medications/Physician Orders dated May 9, 2005.)  Plaintiff was given the medication prescribed by Dr. Mackey by the jail staff.  (Dubose aff. ¶ 7; Exhibit U, Medical File, Medication Administration Record dated May 1, 2005 through May 23, 2005.)  Nurse Dubose checked Plaintiff on May 11, 2005, and May 18, 2005.  (Dubose aff. ¶ 7; Medical File, Progress Notes dated May 11, 2005, and May 18, 2005.)

On the May 18th check-up, Nurse Dubose noted that Plaintiff's foot was clearing up but he had blisters on his hands.  (Dubose aff. ¶ 7; Medical File, Progress notes dated May 18, 2005.)  Nurse Dubose instructed Plaintiff to use his cream on his hands as well.  (Id.)  Plaintiff saw Dr. Schuster on May 20, 2005, and on May 27, 2005, he was seen again by Dr. Schuster at the request of Plaintiff.  (Dubose aff. ¶ 7; Medical File, Progress Notes dated May 20, 2005, and May 27, 2005, Medical Request/Charge Sheet dated May 17, 2005.)  During the May 27, 2005, check-up, Dr. Schuster ordered a corticosteroid injection.  (Dubose aff. ¶ 7; Medical File, Progress Notes dated May 27, 2005, Medications/Physician Orders dated May 27, 2005.)  On June 1, 2005, Nurse Dubose saw Plaintiff and noted that he had finished his medication prescribed by Dr. Mackey and was still not healed, so she set up a follow-up

appointment with Dr. Mackey on June 6, 2005. (Dubose aff. ¶ 7; Medical File, Progress Notes dated June 1, 2005.)

On June 6, 2005, Dr. Mackey noted that the Tinea, "ringworm", was spreading on Plaintiff's arms and legs. (Dubose aff. ¶ 8; Exhibit V, Medical File, Records Received from Dr. Mackey dated June 6, 2005.) Dr. Mackey also noted that the Lamisil and Loprox that he had previously prescribed had actually worsened the symptoms. (Id.) Therefore, Dr. Mackey prescribed Atarax, an antihistamine with anticholinergic (drying) and sedative properties that is used to treat allergic reactions, and TAM, an ointment used on the skin to remove scabies and relieve itchy skin. (Dubose aff. ¶ 8; Medical File, Records Received from Dr. Mackey dated June 6, 2005; Medications/Physicians Orders dated June 7, 2005.) On June 10, 2005, Plaintiff requested to see the doctor. (Dubose aff. ¶ 8; Medical File, Medical Request/Charge Sheet dated June 10, 2005.) He was examined by Dr. Schuster on June 15, 2005, at which time other symptoms were noted. (Dubose aff. ¶ 8; Medical File, Progress Notes dated June 15, 2005.) Dr. Schuster discontinued the Atarax and ordered a corticosteroid injection at that time. (Id.; Medical File, Medications/Physician Orders dated June 15, 2005.)

Officer Brian Woods did not give Plaintiff the wrong medicine, intentionally or otherwise. (Woods aff. ¶ 5.) Officer Woods was not even on duty on the date that Plaintiff claimed that he gave him the wrong medication. (Id.; Exhibit W, Tallapoosa County Employee Time Sheet.) Officer Woods did not ever refuse to give Plaintiff his medication. (Woods aff. ¶ 5.)

Plaintiff has also complained of a toothache and has been added to the waiting list for a dental visit. (Dubose aff. ¶ 9; Medical File, Medical Request/Charge Sheet dated April 23, 2005; Exhibit X, Medical File, Waiting List to see Dr. Norris.)

## 2.    Being housed with state inmates[4]

It is the policy of the Tallapoosa County Jail that an inmate who makes it known to the jail staff that he has an enemy among the jail population is separated from said enemy.  (Jennings aff. ¶ 7.)  To the knowledge of Defendants, Plaintiff has not been threatened or attacked while in the Tallapoosa County Jail.  (Abbett aff. ¶ 5; Sherrer aff. ¶ 5; Jennings aff. ¶ 8; Dubose aff. ¶ 10; Frazier aff. ¶ 6; Woods aff. ¶ 6; Mason aff. ¶ 5.)

## 3.    A jail officer covered one of the windows to the men's cell while females were walking down the hall.[5]

It is the policy of the Tallapoosa County Jail that male and female housing units are separated by sight and sound at all times.  (Jennings aff. ¶ 9.)  At times it is necessary for female inmates to be escorted up the hallway where male inmates are housed in order to visit the law library.  (Id.; Frazier aff. ¶ 5.)  When this becomes necessary, jail staff ask that the male inmates move away from the window to their cells.  (Id.)  This policy is helpful in avoiding incidents in which female inmates are subjected to teasing and cat-calling as well as in preventing the female inmates from "flashing".  (Id.)

On May 12, 2005, Sergeant Frazier was escorting female inmates by cell B-5, a male inmate cell, and requested the male inmates to move away from the window.  (Frazier aff. ¶ 5.)  However, the male inmates would not move away.  (Id.)  Therefore, Sergeant Frazier covered that window for the brief moment that it took to escort the female inmates past that window.  (Id.)  This act presented no danger as there are two other windows on other walls of that particular cell through which jail personnel could observe the inmates.  (Id.)

---

[4] One of these state inmates is Plaintiff's brother, Jarvis Billingsley (Plaintiff's Complaint filed May 16, 2005.)
[5] One of Plaintiff's "witnesses" to this event who was in the cell with Plaintiff at that time is Plaintiff's brother, Jarvis Billingsley.  (Plaintiff's Complaint filed May 16, 2005.)

### 4.    Sleeping on the floor

Inmates are never required to sleep on the bare floor. (Jennings aff. ¶ 10.) In the event of a shortage of bunks, inmates are provided with a mattress as well as linens. (Id.)

### 5.    Grievance Procedures

Internal grievance procedures at the Tallapoosa County Jail are available to all inmates and such policy is made known to the inmates upon their admission to the detention center via the Inmate Rules and Regulations Handbook.  It is the policy of the Tallapoosa County Jail that inmates are permitted to submit grievances and that each grievance will be acted upon accordingly.  Inmates are given an inmate grievance form upon their request to complete and return to a jail staff member for any grievance they may have.  (Jennings aff. ¶ 11.)

Despite the fact that Plaintiff is familiar with the request and grievance procedures of the jail, as evidenced by his several request forms submitted, Jail Administrator Jennings does not have any recollection of a grievance being filed regarding the allegations in Plaintiff's complaint except for requests for medical treatment which were met.  (Jennings aff. ¶ 12; Exhibit Y, Inmate File.[6]; Medical File, Progress Notes dated April 12, 2005, April 14, 2005, April 19, 2005, and May 27, 2005, Medical Request/Charge Sheets dated April 12, 2005 and May 17, 2005.)

Defendants Abbett, Sherrer, and Mason have no knowledge of any of the allegations that form the basis of Plaintiff's Complaint.  (Abbett aff. ¶ 2; Sherrer aff. ¶ 3; Mason aff. ¶ 3.)

---

[6] The remaining documents in Plaintiff's inmate file that are not previously identified as separate exhibits are attached hereto as Exhibit X.

**B.     LAW**

**1.     Any claim by Plaintiff against Defendants in their official capacity must fail based on Eleventh Amendment immunity and because they are not "persons" under 42 U.S.C.A. § 1983.**

Plaintiff's claims for money damages against Defendants in their official capacities are due to be dismissed for lack of subject matter jurisdiction; as such claims are barred by the Eleventh Amendment to the United States Constitution.  Parker v. Williams, 862 F.2d 1471, 1476 (11th Cir. 1989) (holding a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Free v. Granger, 887 F.2d 1552, 1557 (11th Cir. 1989) (holding that a sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Carr v. City of Florence, 918 F.2d 1521, 1525 (11th Cir. 1990) (holding a deputy sheriff sued in his official capacity is entitled to Eleventh Amendment immunity); Lancaster v. Monroe County, 116 F.3d 1419, 1430-31 (11th Cir. 1997) (extending Eleventh Amendment immunity to include jailers employed by county sheriffs);  See also Gaines v. Choctaw County Comm'n, 242 F. Supp. 2d 1153, 1159 (N.D. Ala. 2003) ("The Sheriff is considered a state officer, and so are his employees."); Vinson v. Clarke County, 10 F. Supp. 2d 1282, 1305 (S.D. Ala. 1998) (explaining "the sovereign immunity protections have been construed by courts to extend to employees of the state, including county sheriffs and jailers).

In addition, the official capacity claim must fail because 42 U.S.C.A. § 1983 prohibits a **_person_**, acting under color of law, from depriving another of his rights secured by the United States Constitution.  42 U.S.C.A. § 1983 (emphasis added).  The United States Supreme Court has held that state officials, in their official capacities, are not "persons" under § 1983.  Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989).  Any claim against Defendants in their

official capacities should therefore be dismissed because they are not "persons" under § 1983 and therefore claims against them in their official capacity fail to state a claim upon which relief can be granted.  Id.; Carr,  916 F.2d at 1525 n.3.

      2.     **Plaintiff's failure to comply with the Prison Litigation Reform Act bars the Complaint.**

      a.     **Plaintiff has failed to exhaust all Administrative Remedies.**

Under the Prison Litigation Reform Act ("PLRA"), an inmate is required to exhaust all administrative remedies before instituting an action under 42 U.S.C. § 1983.  42 U.S.C. § 1997e(a).  The Plaintiff in this case has not utilized two separate and distinct administrative remedies available to him.  First, the Plaintiff has not exhausted the grievance procedures provided at the Tallapoosa County Detention Facility.  Secondly, he has not alleged that he pursued any grievance through the State Board of Adjustment.  See Brown v. Tombs, 139 F.3d 1102, 1103-04 (6th Cir. 1998) (requiring prisoners to affirmatively show that they have exhausted administrative remedies).

Internal grievance procedures at the Tallapoosa County Detention Facility are available to all inmates.  It is the policy of the Tallapoosa County Sheriff's Department that inmates are permitted to submit grievances and that each grievance will be acted upon.  Inmates are given an Inmate Grievance Form to complete and return to a Tallapoosa County Detention Facility staff member for any grievances they may have.  No such grievance was filed by the Plaintiff except requests for medical treatment filed by Plaintiff which were met.

In addition to the grievance procedure at the local level, Alabama law provides the opportunity to file a claim and proceed before the State of Alabama Board of Adjustment pursuant to Ala. Code § 41-9-60.  The Sheriff of Tallapoosa County, as are his alter egos, is a state officer and therefore would be entitled to sovereign immunity.  See Lancaster v. Monroe

County, 116 F.3d 1419, 1429 (11th Cir. 1998). Due to this immunity, the State of Alabama has provided an administrative remedy for the recovery of money damages through the State of Alabama Board of Adjustment.

As a result of Plaintiff's failure to exhaust these two remedies, he is barred from bringing this action under § 1997e(a). See Alexander v. Hawk, 159 F.3d 1321, 1326-27 (11th Cir. 1998) (affirming dismissal of prison action due to failure to exhaust administrative remedies).

> **b.    Plaintiff's claims are barred by the Prison Litigation Reform Act because he has not suffered any physical injury as a result of the allegations in his Complaint.**

42 U.S.C. § 1997e(e) of the Prison Litigation Reform Act requires that a plaintiff demonstrate that he suffered physical injury before instituting a complaint based upon jail conditions. The PLRA states the following concerning physical injury:

> No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury. 42 U.S.C. § 1997e(e).

The Eleventh Circuit has determined that the physical injury requirement of § 1997e(e) requires that a plaintiff demonstrate a physical injury that is more than *de minimis* although the injuries do not have to be significant. Harris v. Garner, 190 F.3d 1279, 1286 (11th Cir.), vacated, 197 F.3d (11th Cir. 1999), reinstated in relevant part, Harris v. Garner, 216 F.3d 970 (11th Cir. 2000) (en banc). In the present action, in reference to the claims regarding conditions of confinement, Plaintiff has not demonstrated that he has suffered a physical injury that is more than *de minimis* as a result of the allegations described in his Complaint. As a result, the conditions of confinement claims are due to be dismissed pursuant to 42 U.S.C § 1997e(e).

3. **Alternatively, Defendants are entitled to summary judgment based on the defense of qualified immunity.**

a. **Qualified Immunity Standard**

Once a defendant has asserted the defense of qualified immunity, the threshold inquiry a court must undertake is whether the plaintiff's allegations, if true, establish a constitutional violation. Saucier v. Katz, 533 U.S. 194, 201 (2001). This initial inquiry is whether "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" Id. (citing Siegert v. Gilley, 500 U.S. 226, 232 (1991)). The second inquiry is, if a constitutional violation is stated, were these rights "clearly established" to the degree that these Defendants had "fair warning" that their conduct violated the plaintiff's constitutional rights? Willingham v. Loughnan, 321 F.3d 1299, 1301 (11th Cir. 2003).

In making an assessment of whether the particular conduct of these Defendants was clearly established as being violative of constitutional dictates, the reviewing court must examine the state of law at the time the alleged deprivation occurred. See Rodgers v. Horsley, 39 F.3d 308, 311 (11th Cir. 1994). A constitutional right is clearly established only if its contours are "sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson, 483 U.S. at 640; Lancaster, 116 F.3d at 1424. "In this circuit, the law can be 'clearly established' for qualified immunity purposes only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose." Jenkins v. Talladega Board of Education, 115 F.3d 821, 827 (11th Cir. 1997) (en banc) (citations omitted).

Assuming, *arguendo*, that the Plaintiff could demonstrate a constitutional violation, he must still show that clearly established law provided the Defendants with fair warning that their conduct

was unlawful.  He may do so by either (1) pointing to a case with materially similar facts holding that the conduct engaged in was illegal; or (2) demonstrating that a pertinent federal statute or federal constitutional provision are specific enough to demonstrate conduct was illegal, even in the total absence of case law.  Storck v. City of Coral Springs, 354 F.3d 1307, 1317 (11th Cir. 2003) (citations omitted).  The Eleventh Circuit has identified the latter method as an "obvious clarity" case.  Vinyard v. Wilson, 311 F.3d 1340, 1350 (11th Cir. 2002) (footnote omitted).  In order to show that the conduct of the Defendants was unconstitutional with "obvious clarity," "the unlawfulness must have been apparent."  Willingham, 321 F.3d at 1301.  "Unless a government agent's act is so obviously wrong, in the light of pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor has immunity from suit."  Storck, 354 F.3d at 1318 (quoting 28 F.3d at 1149).

Plaintiff has not met his burden of demonstrating a constitutional violation or showing that clearly established law provided the Defendants with fair warning that their conduct was unlawful. Therefore, defendants are entitled to qualified immunity.

> **b.      Plaintiff has failed to establish any deliberate indifference by Defendants to a serious medical condition from which Plaintiff suffered.**

In order to prevail under 42 U.S.C. § 1983 on his medical claim, Plaintiff must demonstrate that Defendants were deliberately indifferent to a serious medical condition. Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious."  Hudson v. McMillian, 503 U.S. 1, 9 (1992).

> A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.  A prison or medical official may be held liable under the Eighth Amendment for actions with "deliberate

indifference" to inmate health or safety only if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. Mere negligence does not suffice to prove deliberate indifference.

Farmer v. Brennan, 511 U.S. 825, 837 (1994) ("Deliberate indifference describes a state of mind more blameworthy than negligence."). Furthermore, where a prisoner has received medical attention and the dispute concerns the adequacy of the medical treatment, deliberate indifference is not shown. Hamm v. DeKalb County, 774 F.2d 1567 (11th Cir. 1985).

Plaintiff has failed to show and there is no evidence showing that Plaintiff has had a serious medical condition. Further, the contents of Plaintiff's Inmate Medical File show that the Tallapoosa County Jail has provided extensive medical care to Plaintiff. In the three months that Plaintiff has been incarcerated in the Tallapoosa County Jail, Plaintiff has been by Dr. Schuster the Jail Physician, six times, Dr. Mackey, a private physician twice, and Nurse Dubose, the Jail Nurse at least ten times. Plaintiff has been given medical care as well as prescription medications. Jail personnel have promptly responded to all medical requests made by Plaintiff. Clearly, Plaintiff has not shown that Defendants were in any way deliberately indifferent to any serious medical need of the Plaintiff.

An inmate does not have a right to a *specific* kind of treatment. City of Revere v. Massachusetts General Hosp., 463 U.S. 239, 246 (1983) (holding, "the injured detainee's constitutional right is to receive the needed medical treatment; *how [a municipality] obtains such treatment is not a federal constitutional question*") (emphasis added). Furthermore, this Court should not substitute its medically untrained judgment for the professional judgment of the medical health professionals who treated the Plaintiff. See Waldrop v. Evans, 871 F.2d 1030, 1035 (11th Cir. 1989) (observing that "when a prison inmate has received medical care, courts hesitate to find an Eighth Amendment violation"); Hamm v. DeKalb County, 774 F.2d 1567,

1575 (11th Cir. 1985) (stating that the evidence showed the plaintiff received "significant" medical care while in jail, and although plaintiff may have desired different modes of treatment, care provided by jail did not constitute deliberate indifference), cert. denied, 475 U.S. 1096 (1986); Westlake v. Lucas, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (stating "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments").

Furthermore, the non-medical Defendants do not have any kind of medical education, training or experience. They rely upon the professional judgment of medical professionals who have been retained to provide care to the inmates. While the Eleventh Circuit has not had an opportunity to visit this issue, the Eighth Circuit has addressed a similar claim. In Meloy v. Bachmeier, 302 F.3d 845 (8th Cir. 2002), a former inmate sued several prison doctors, a nurse, and the prison's medical director[7] for failing to provide him with a positive air pressure machine needed to treat his sleep apnea. 302 F.3d at 847. Reversing the district court's denial of summary judgment for the director, the Eighth Circuit began by making some common sense observations. "A prison's medical treatment director who lacks medical expertise cannot be liable for the medical staff's diagnostic decisions." 302 F.3d at 847 citing, Camberos v. Branstad, 73 F.3d 174, 176 (8th Cir. 1995). Further, the Meloy court stated "[p]rison officials cannot substitute their judgment for a medical professional's prescription." Id. citing, Zentmyer v. Kendall County, 220 F.3d 805, 812 (7th Cir. 2000). Finally, the court held:

> The law does not clearly require an administrator with less medical training to second-guess or disregard a treating physician's treatment decision. Because the law was not clearly established that [the director] was deliberately indifferent to [the plaintiff's] serious medical needs, [the director] is entitled to qualified immunity.

302 F.3d at 849.

---

[7] The medical director was a trained and licensed nurse. 302 F.3d at 846.

Further, the <u>Meloy</u> court addressed the liability of the jail nurse, saying that her conduct in relying on and following the orders of medical doctors who had more training than her, and because she did not interfere with the Plaintiff's access to those doctors, her actions were objectively reasonable, and therefore she was not liable to the Plaintiff. In the instant case Nurse Dubose, aided Plaintiff in obtaining treatment from Plaintiff's treating physicians and followed all orders of said physicians, including overseeing the administration of all prescribed medications. Just like the nurse in <u>Meloy</u>, Nurse Dubose acted reasonably in her medical care of Plaintiff. Therefore, Nurse Dubose is not liable to Plaintiff in any respect.

    **4.**    **Plaintiff's claim against Defendants Sheriff Jimmy Abbett, Chief Deputy Kenny Sherrer, and Sergeant Ava Mason, must fail because he has not alleged that they had any personal involvement in the alleged constitutional violation.**

Plaintiff does not allege that Defendants Sheriff Jimmy Abbett, Chief Deputy Kenny Sherrer, and Sergeant Ava Mason were in any way personally involved in Plaintiff's alleged constitutional violation. In fact Plaintiff has not even made any specific allegations against these Defendants. Defendants therefore construe Plaintiff's claim against them as an attempt to hold them liable under a *respondeat superior* theory. To the extent Plaintiff seeks relief on that basis,

> [Supervisory] liability under § 1983 must be based on something more than a theory of *respondeat superior*. Supervisory liability occurs either when the supervisor personally participates in the alleged constitutional violation or when there is a causal connection between actions and the supervising official and the alleged constitutional violation. The causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.

<u>Dolihite v. Maughon</u>, 74 F.3d 1027, 1052 (11th Cir. 1996). There are absolutely no facts that show that these Defendants personally participated in any alleged constitutional violation. Therefore, Plaintiff's claim against Defendants Sheriff Jimmy Abbett, Chief Deputy Kenny Sherrer, and Sergeant Ava Mason are due to be dismissed.

### 5.     Summary Judgment Standard

On a motion for summary judgment, the court should view the evidence in the light most favorable to the nonmovant.  <u>Greason</u>, 891 F.2d at 831.  However, a plaintiff "must do more than show that there is some metaphysical doubt as to the material facts."  <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986).  Only reasonable inferences with a foundation in the record inure to the nonmovant's benefit.  <u>See</u> <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133 (2000).  "[T]he court should give credence to the evidence favoring the nonmovant as well as that 'evidence supporting the moving party that is uncontradicted or unimpeached, at least to the extent that that evidence comes from disinterested witnesses.'"  <u>Reeves</u>, 530 U.S. at 151, quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2529, p. 299.[8]  "A reviewing court need not 'swallow plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited.'"  <u>Marsh v. Butler County</u>, 268 F.3d 1014, 1036 n.16 (11th Cir. 2001) (<u>en banc</u>) quoting <u>Massachusetts School of Law v. American Bar</u>, 142 F.3d 26, 40 (1st Cir. 1998).

## IV.     CONCLUSION

Defendants deny each and every allegation made by Plaintiff Lorenzo Neal Billingsley in the Complaint.  Defendants have not acted in a manner so as to deprive Plaintiff of any right to which he is entitled.

## V.     MOTION FOR SUMMARY JUDGMENT

Defendants respectfully request that this Honorable Court treat their Special Report as a motion for summary judgment, and grant unto them the same.

---

[8] Although <u>Reeves</u> was a review of a motion for judgment as a matter of law after the underlying matter had been tried, the Supreme Court, in determining the proper standard of review relied heavily on the standard for summary judgment stating, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'"  <u>Reeves</u>, 530 U.S. at 150, <u>citing</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-251 (1986); <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986).

Respectfully submitted this the 27th day of June, 2005.

s/Amanda Allred
GARY L. WILLFORD, JR. Bar Number:  WIL198
AMANDA ALLRED Bar No. ALL079
Attorneys for Defendants
WEBB & ELEY, P.C.
7475 Halcyon Pointe Drive
P.O. Box 240909
Montgomery, Alabama  36124
Telephone:  (334) 262-1850
Fax:  (334) 262-1889
E-mail:  aallred@webbeley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this the 27th day of June, 2005, I have electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, and that I have mailed a true and correct copy of the foregoing by United States Mail, postage prepaid, to the following non-CM/ECF participant:

Lorenzo Neal Billingsley
Tallapoosa County Jail
316 Industrial Park Drive
Dadeville, AL 36853

s/Amanda Allred
OF COUNSEL